On Rehearing
 

 MOISE, Justice.
 

 Plaintiff having died after the original hearing of this case, his testamentary executor became a necessary party to this proceeding, under Section 1 of Rule XIV of this Court.. The executor’s application for a rehearing was granted and we now have this litigation before us for further consideration.
 

 In addition to the facts substantially set forth in the original opinion, we find in the record an agreed statement of fact in which it is admitted that the policy was in full force, that the premiums were all paid during the disability period from January 7, 1939 to August 31, 1939, that the assured was during said period totally disabled by reason of illness as sat forth in Article 5 of his petition, and that at all times during said disability period he was under the orders, care and attention of five physicians.
 

 ■ It was also shown that the policy was in effect for thirteen years prior to- the time of the filing of the suit. Mr. Robert Crump, the agent of the company who sold the policy to plaintiff was still with the company and was the agent who called at the Hotel Dieu during his total disability . arid obtained from assured the policy for the purpose of having the company change the beneficiary. Mr. Kammer, Attorney for the insurer stated: (during the trial of the case on the merits) “We will admit that for the purpose of changing the beneficiary the policy had to be in the possession of the company for the interim.”
 

 Considering the admissions in the above referred to stipulations as to assured’s total disability it is not necessary to further dis
 
 *355
 
 cuss this point. The policy contract likewise provides that disability for .a period of three months shall be regarded as total disability.
 

 In consultation it was discovered that a majority of the Court felt that a recovery should be had and that the original decree herein should not be reinstated. Chief Justice FOURNET wrote a dissent against the reinstatement of the original decree and because the decree was not reinstated that dissent remains unrecorded. We now quote this unrecorded dissent with approval:
 

 “In the words of Justice HAMITER in his dissenting opinion on the original hearing of this case, ‘the numerous so-called “goose cases” from other jurisdictions to the contrary notwithstanding,’ I cannot subscribe to the views expressed in the majority opinion.
 

 “A careful study and analysis of the provisions of the policy in controversy, in my opinion, and as demonstrated by Justice HAMITER in his dissent (that was only released after the majority opinion on the original hearing had been signed in consultation), shows that the clause in controversy is susceptible of two interpretations. Under our civil law we are admonished in construing contracts, and particularly clauses susceptible of two interpretations, to give them the interpretation that carries out the object and purpose of the contract. Articles 1945 and 1951 of the Revised Civil Code. The object and purpose of the contract here under consideration is to indemnify the insured in the case of total permanent disability. Also, under our civil law we are admonished, in a doubtful case, to interpret the agreement against ‘him who has contracted the obligation.’ Article 1957. These two civil law rules of interpretation are in accord with the general rule governing insurance contracts that a policy, whensver ambiguous, should be given a construction that is most favorable to the insured.
 

 “While the ‘so-called goose cases’ of other iurisictions are sometimes persuasive and of great aid in deciding cases, when the contract is so clearly susceptible of two different interpretations, as ably demonstrated in the dissenting opinion above referred to, it is my opinion that it is the duty of the court to ignore such holdings and to exercise its own judicial prerogatives.”
 

 In the dissent of Mr. Justice HAMITER to the original opinion, the obscurity in the language of the policy clauses — the bone of contention — is clearly shown. To arrive at the conclusion reached by the majority opinion, the civil law precept must be ignored and this ambiguous clause interpreted in favor of the company and against the assured. Mr. Justice HAMITER stated: “It stipulates that the company will ‘Pay To The Insured a Monthly Disability-Annuity as stated on the face hereof; the first payment to be payable upon receipt of due proof of such Disability and subsequent
 
 *357
 
 payments monthly thereafter during the continuance of such total and permanent Disability. This stipulation, by adding the word ‘monthly’ to the phrase ‘the first payment’, can be interpreted as the majority has done. However, as written and without the addition, it logically can be construed also as obligating the comp-any for disability benefits from the inception of the disability with the obligation dischargeable or payable only after receipt of due proof.”
 

 This interpretation is in keeping with the codal articles Nos. 1945, 1951, 1952 and 1957. Of course, proof must be submitted of a loss, a death, or total disability, in order to ascertain the truth, to render the policy provisions effectual. All disability must be specifically and clearly set out by proof. With this requirement the law of right will supercede might and the rule of common sense like the atmosphere we breathe will surround all mankind in a policy-protection after death or during total disability.
 

 The codal articles also provide that “the reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent.” Article 1824, R.C.C.
 

 There was no valid consent by the assured to the forfeiture of the payment of disability and waiver of insurance premiums. If such were the case as held'by the majority-original opinion, the company should have made this clear in the language of the contract, or given an explanation. The cause and motive for the contract indicates that plaintiff believed that he was purchasing a monthly disability annuity without deduction at maturity when payments became due, as provided for on the face of the policy, and without this understanding his consent would never have been obtained. R.C.C. Art. 1824. The company knew that assured was in the hospital. The company knew that the assured had a policy for permanent disability because it had that policy in its possession for a time during assured’s disability for the purpose of changing the beneficiary. The company received all of the benefits and all of the profits but yet disavowed any responsibility whatsoever and refused to make any payment after admitting the permanent disability of the assured during the time from January 7, 1939 until August 31, 1939. For what purpose then did the assured comply with the contract, to each and to all of its provisions — as to age, payment of premiums, etc. His purchased protection becomes a meaningless abstraction. Courts will limit “man’s inhumanity to man” in some degree by providing rules of interpretation of contracts. Our Code has provided under Articles 21 and 1965 the equitable provisions and the codal articles also provide the law. We have a sacred rela.
 
 *359
 
 tionship of lawyer and client, physician and pafient, but is there any more sacred relationship than insurer and assured? The lawyer gives
 
 legal
 
 advice and guidance to the client, the physician eases or cures infirmities of the body of a patient and the insured deals with man in most cases where the soul has left the body and provides for his loved ones’ protection after death or during total disability. We admit that the insurance company is unlike the doctor or lawyer and that it has its stockholders and policyholders to protect, and that it owes to them a fair and prudent administration and that it has the right to place in its policies provisions as to proof of loss or disability or death for the giving of notice of claims. The proof is one thing, a forfeiture of all protection is another. Timely proof of disability is for the purpose of preventing fraud and' ill-practices on the part of an assured or his heirs, and further, not to place the insurance company at a disadvantage in obtaining the evidence for its defense. These are proper means of protection for the business and if in a given case like here where the records of the Hotel Dieu are available, where five physicians who attended the assured were all alive at the time of the trial on the merits and the general good reputation of the insured for integrity was beyond questioning, the cause of the policy provisions having been removed, no longer existed.
 

 The organ of the Court in the majority opinion quoted authorities from numerous common law jurisdictions. In these jurisdictions they do not have the articles of our Code. .The infiltration of these decisions menaces the clear provisions of our Civil Code .and our settled rules of interpretation. It is not permissible under our Code to add any words to the contract, to free the clause from ambiguity. The word “monthly” must be added before the words “first payment” to give the provision the interpretation placed upon it by the original opinion. We should not make an interpretation fit a preconceived theory but make the theory conform to the law. The civil law rules of interpretation are traditional with Louisiana. We as judges worship out traditions. Our identity and individuality as a civil law state must be maintained if we are going to stabilize with consistency our jurisprudence. Our decisions should not be merged with the infiltration of technicalities of the law of other states so as to make the jurisprudence petrified by common law precedents. “Our anchor should be on the rockbed of our Civil Code, the
 
 most
 
 profound philosophical depository of juristic science.”
 

 Plaintiff has carried the burden of establishing his claim with legal certainty and, therefore
 

 The judgment appealed from is annulled and set aside and it is now ordered that there be judgment in favor of plaintiff and against the defendant for total disability from January 7, 1939 to August 31, 1939, at $100.00 per month, together with legal
 
 *361
 
 interest thereon from date of judicial demand until paid; and for all costs of court.
 

 HAWTHORNE and McCALEB, JJ., dissent with written reasons.
 

 LE BLANC, J., dissents.